BARNES, PJ, HORNBECK and BODEY, JJ, concur.

Jacobson & Durst, Dayton, for plaintiff.
A. P. Mercer, Dayton, and G. E. Miller, Dayton, for defendant.

## OPINION

By BODEY, J.

It is shown by a preponderance of the evidence, in our judgment, that the plaintiff's money was expended for the discharge of the two mortgages set out in the petition and that the same were paid off on condition that her mother execute to her a first mortgage upon said real estate covering the amount of said contributions; that the sum of $1216.11 was paid by this plaintiff on the mortgage to the Dayton Savings & Trust Company, and the sum of $748.77 was paid on the Hagenbucher mortgage; that plaintiff paid out for improvements in these premises the sum of $815.00, paying $300.00 for the construction of a garage, $250.00 for the digging of a cellar and $265.00 for the installation of a furnace, said payments being made upon the express promise of· her mother to execute to plaintiff a promissory note covering said amounts; that the sum of $1400.00 was awarded to the defendant, Emery Schmidt on hearing of the divorce case between his wife and himself, said $1400.00 representing one-half of the down payment which was made for the purchase of the premises from the Hagenbuchers; that the down payment for said purchase was $2800.00 and that the same was paid by the defendant, Emery Schmidt; that the · two mortgages referred to in the petition were discharged

by the plaintiff after the defendant, Emery Schmidt had conveyed to his wife the undivided one-half of the premises in controversy.

Counsel refer us to the case of **Federal Union Life Insurance Company v Deitsch, 127 Oh St, 505,** which approved and followed **Straman v Rechtine et, 58 Oh St, 443** and to case of **Amick v Woodworth et, 56 Oh St, 86** as controlling the questions here submitted. The first branch of the syllabus in the case of Straman v Rechtine et, is as follows:

"1. Where money is loaned under an agreement that it shall be used in the payment of a lien on real estate, and it is so used, and the agreement is that the one who so loans the money shall have a first mortgage lien on the same lands to secure his money and through some defect in the new mortgage or oversight as to other liens, the money can not be made on the last mortgage, the mortgagee has a right to be subrogated to the lien which was paid by the money so by him loaned, when it can be done without placing greater burdens upon the intervening lienholders than they would have borne if the old mortgage had not been released, but not as against a bona fide lienholder who acquired his lien after the release of the old mortgage without notice of such agreement and payment."

Branch three of the syllabus of the case of Amick v Woodworth is as follows:

"3. As a general rule, one having an interest in or lien on property, who pays off for his protection a prior incumbrance upon it, is entitled in equity to be subrogated to all the rights of the prior incumbrancer, and to enforce the security for his reimbursement out of the incumbered estate. This equitable right, however, will not prevail against the intervening bona fide purchasers without notice, or those occupying a like position; nor does it belong to a mere stranger or volunteer who pays the incumbrance."

The Court of Appeals of the Ninth District in the case of **Miller v Scott, 23 Oh Ap, 50 (2 Abs 330),** in commenting upon the syllabi of these two cases, supra, says:

"As we construe these cases in the light of general principles and decided cases, we do not think that the Supreme Court meant to place 'a bona fide lienholder who acquired his lien after the release of the old mortgage without notice' in the position of 'a bona fide purchaser without notice.' Such lienholder occupies the position of such purchaser only in the event that his burdens are increased by the allowance of the subrogation.

Mrs. Miller's position is not that of a bona fide purchaser. 'A judgment creditor is not a purchaser, nor entitled to the privileges of that position.' Tousley v Tousley, 5 Oh St, 78. Was she a bona fide lienholder, whose burdens would be increased by the application of the doctrine of subrogation?"

In line with the construction placed upon the holding in these cases by the court in the case of Miller v Scott, we believe that the question for determination in the instant case is, was Emery Schmidt a bona fide lienholder whose burdens would be increased if the doctrine of subrogation is applied? We do not believe that a further or additional burden would be placed upon him by holding that the plaintiff in this case is entitled to be subrogated to the former rights of the Dayton Savings & Trust Company and of Frederick Hagenbucher on their respective mortgages. In this case, when Emery Schmidt deeded the undivided one-half interest in this property to his wife, he knew that the property was subject to a total mortgage of about $1900.00. He also knew that he was individually liable for the whole of this indebtedness and that the property as a whole was liable for the payment of these mortgages before he might, in the event of her death, realize under the statutes governing dower or descent and distribution. According to his own testimony, he was the owner of a judgment in the sum of $1400.00 against the defendant, Alice Schmidt, because the Common Pleas Court of this county desired to return to him one-half of the down payment which was made for the purchase of these premises. If the property had been sold while the Schmidts were the joint owners of the same, these mortgages would first have been paid and then the balance would have been subject to distribution equally between them. We believe that the defendant, Emery Schmidt, is "a bona fide lienholder in the sense of a proper motive but not in the sense of reliance upon a given situation," as is so well stated in the case of Miller v Scott, supra. It surely was not the intent of the Common Pleas Court, in the divorce proceedings, to place the defendant, Emery Schmidt, in the situation that his judgment claim would be superior to the rights of a third party who had discharged these two mortgages under a contract with his wife.

As has already been stated, the case of

Straman v Rechtine et, was approved and followed in the case of **The Federal Union Life Insurance Company v Deitsch et, 127 Oh St, 505.** The former case is followed in the rule that the doctrine of subrogation may be applied when the burdens of a prior intervening mortgagee are in no wise increased. On this theory of the law, we do not believe that the defendant, Emery Schmidt, has right or cause to complain.

Our attention is likewise called to the case of **Miller v Albright, 60 Oh St, 48.** In that case the court held that the equitable lien of a vendor for unpaid purchase money is paramount to the liens of judgments recovered against the vendee on debts contracted by him after his deed had been recorded, although the judgment creditors had no notice of the equitable lien. It was further held that such priority is not affected by the levy of execution. In its opinion the court says:

"it is a well established rule that the lien of a judgment attaches only to such beneficial interest in land as the judgment debtor has at the time of its rendition; and when the rule is not otherwise affected by a statutory regulation * * * the judgment lien is subject to all equities concerning the land which could be successfully asserted against the debtor."

Again the court says:
"The levy like the judgment reaches nothing more than the interest which the debtor has in the property."

We are of opinion that this case is authority for holding that the right of the defendant, Emery Schmidt, under his judgment and execution is inferior to the claim of subrogation of plaintiff. At the time of the entry of this judgment, Alice Schmidt was the owner of the legal title to the real estate in question. Her beneficial ownership, however, did not include the entire property. It was only equal to the value of the property less the amount which had been paid by the plaintiff to discharge the two mortgages thereon. In our judgment, this beneficial interest of Alice Schmidt is all that would be subject to the execution levy of the defendant, Emery Schmidt, on his judgment. We do not believe that a third person who discharges mortgages at the request of the owner of real estate is in any different situation toward creditors without notice than is the vendor of that real estate who claims a vendor's lien. The facts in the instant case are strong, however, because Emery

Schmidt did have knowledge of the existence of these mortgages at the time he vested full title to the property in his wife and he subsequently had knowledge of their discharge and payment. It is our judgment that the plaintiff is entitled to be subrogated to the rights of the Dayton Savings & Trust Company on its mortgage to the amount of $1216.11 with interest from the 27th day of August 1929, and that she is entitled to be subrogated to the rights of Frederick Hagenbucher on his mortgage in the sum of $700.00 with interest from the third day of June 1922 and in the sum of $48.77 with interest from the 13th day of May 1924.

The above reasoning does not apply to the claim of plaintiff for repairs and improvements made on this property at her expense. According to her testimony, her mother agreed to give her a note for the amounts expended for these repairs and improvements. Apparently the matter of securing the payment of that note was not discussed between them. That being true, the plaintiff is in no different situation than any general creditor, although she is entitled to have the contract with her mother carried out. If that is done, her mother should execute to her a promissory note in the sum of $815.00 which is the amount disclosed by the evidence as having been paid by the plaintiff. There is testimony of the plaintiff to the effect that she spent $700.00 or $800.00 more. In our judgment, this is too indefinite for the court to use as a basis for its judgment. The defendant, Alice Schmidt, should execute to the plaintiff a note as above described.

The effect of this finding of the court is that the plaintiff has the first and best lien upon the real estate described in the petition by reason of her subrogation to the rights of these mortgagees and that the defendant, Emery Schmidt, has the next lien by reason of his judgment. The sale on execution could not now continue because of the fact that there are other liens upon the property. For that reason the temporary restraining order issued by the lower court is made permanent. The costs should be paid by the defendants.

BARNES, PJ, and HORNBECK, J, concur.

## ON APPLICATION FOR REHEARING

Decided July 31, 1935

By BODEY, J.

In the application for rehearing, counsel for defendant in error, Emery Schmidt,

claim that the decision of the court heretofore announced strikes at the very foundation of our law pertaining to laches, the Statute of Frauds, equitable maxims and our recording acts. Counsel complain that we have failed to follow the case of Straman, Admr. v Rechtine et, 58 Oh St, 443. As stated in our written opinion, that case was thoroughly analyzed in Miller v Scott, 23 Oh Ap, page 30. We are in accord with the latter decision and adhere to our former opinion. It must not be forgotten that the situation presented in the case at bar is one involving a mother, her daughter and her former husband. Equity and the justice of the situation demand that Emery Schmidt should be protected with his judgment lien and execution and they also require that Jeanette Priddy should be protected. No burdens are added to Emery Schmidt by the decision announced by the court. We believe that under the facts and circumstances of this case equitable principles have been announced which properly and correctly protect the rights and claims of each of these parties. It is well known that the doctrine of laches does not apply as strongly or as strictly to members of a family as it does to strangers. The facts in the instant case lead us to the conclusion that the doctrine of laches can not avail the defendant in error. The right of subrogation may be based upon an oral contract as well as one in writing. All of the claims advanced by counsel upon this application for rehearing were carefully considered by the court before disposing of the case originally. We are in accord with the holding expressed by the court in its original opinion and we adhere thereto upon this application for rehearing. The application is, therefore, denied.

BARNES, PJ, and HORNBECK, J, concur.